CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUL 0 S 2007
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| CARLA E. PLEASANTS, ) | |
| ) | Civil Action No. 5:06CV00100 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | By:   Honorable Glen E. Conrad |
| ) | United States District Judge |
| Defendant. ) | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and argument submitted by the parties, the issues before this court are whether the Commissioner's final decision is supported by substantial evidence, and if it is not, whether plaintiff has met the burden of proof as prescribed by and pursuant to the Act. Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Carla E. Pleasants, was born on February 1, 1973, and eventually completed her high school education. Mrs. Pleasants also attended community college for a short period of time. Mrs. Pleasants has been employed in a wide variety of work roles including cashier, cleaner, line worker, sales person, equipment delivery, waitress, warehouse worker, lawn care worker, and taxi driver. The Administrative Law Judge found that Mrs. Pleasants last engaged in substantial

gainful activity at a time prior to her amended, alleged onset date. (TR 14). On September 16, 2004, plaintiff filed applications for disability insurance benefits and supplemental security income benefits. Mrs. Pleasants alleged that she became disabled for all forms of substantial gainful employment on April 30, 2003 due to bipolar disorder. At the time of the administrative hearing, plaintiff amended her application so as to reflect an alleged disability onset date of October 1, 2004. She now maintains that she has remained disabled to the present time. As to her application for disability insurance benefits, the record reveals that Mrs. Pleasants met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See generally, 42 U.S.C. § 423.

Mrs. Pleasants' claims were denied upon initial consideration and reconsideration. She then requested and received a *de novo* hearing and review before an Administrative Law Judge. In an opinion dated June 28, 2006, the Law Judge also determined that plaintiff is not disabled. The Law Judge found that Mrs. Pleasants suffers from bipolar disorder. Despite this condition, the Law Judge held that plaintiff retains sufficient functional capacity to return to her past relevant work as a cleaner. Accordingly, the Law Judge ultimately concluded that Mrs. Pleasants is not disabled, and that she is not entitled to benefits under either federal program. See generally, 20 C.F.R. §§ 404.1520(f) and 416.920(f). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mrs. Pleasants has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered

2

in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. Mrs. Pleasants suffers from bipolar disorder. She was treated for this condition by her family physician. The family physician eventually found it necessary to refer plaintiff to a psychiatrist for ongoing maintenance. The psychiatrist produced clinical findings documenting severe and unpredictable mood swings typical of bipolar disorder. The treating psychiatrist has also produced an assessment of plaintiff's mental ability for work-related activities, which indicates that Mrs. Pleasants is unable to engage in any regular and sustained work activity. In denying plaintiff's claims, the Commissioner relied on a consultative psychological study, completed by a neuropsychologist who saw plaintiff on only a single occasion. Under the governing administrative regulations, the court finds that the Commissioner erred in giving greater weight to the consultative psychological study. Based on the reports from the psychiatrist who saw plaintiff on a regular basis, the court concludes that Mrs. Pleasants has met the burden of proof in establishing that she was disabled for all forms of substantial gainful employment for a period exceeding one year. Accordingly, the court concludes that plaintiff is entitled to a period of disability and disability insurance benefits.

As previously noted, plaintiff's treating family doctor, Dr. Linford Gehman, first diagnosed Mrs. Pleasants' bipolar disorder. Dr. Gehman prescribed appropriate medication, and his practice

3

documented Mrs. Pleasants' irritability, agitation, impaired concentration, difficulty completing tasks, and mood swings. The clinical reports indicate that plaintiff received treatment at Dr. Gehman's office on a regular basis in 2004, and that substantial effort was expended in attempting to maintain plaintiff's lithium at a therapeutic level. Throughout this period, Mrs. Pleasants was observed to experience mood swings, increased anxiety, and periods of great agitation. Dr. Gehman eventually referred Mrs. Pleasants to Dr. Thomas M. Cardwell, a psychiatrist.

Sometime before Mrs. Pleasants was first seen by Dr. Cardwell, the Disability Determination Services arranged for a consultative examination by Dr. Nadia Webb, a neuropsychologist. Dr. Webb completed a report on December 24, 2004. Dr. Webb diagnosed depression, which she characterized as seasonal affective disorder, borderline personality, and cyclothymia. The psychologist went on to assess Mrs. Pleasants' condition as follows:

> Ms. Pleasants appears fully competent to manage her funds. While she tends to overspend, she appears to have full capacity to do the calculations involved and she has some assistance from her husband with her agreement in managing family budget. Ms. Pleasants was able to follow simple and complex instructions. She was able to attend the appointment and to work consistently throughout it. She did not appear to need additional supervisions. She seemed likely to be able to work without intrusion of major psychiatric symptoms except during the winter. She also appears to be somewhat quick to quit jobs, and she responds very poorly to criticism according to her own self-report. These do not appear to be problems, which would render her incapable of maintaining her self-sufficiency. She reports no difficulty tolerating stress in the workplace and frankly reports that she has more difficulty when worked [sic] slowed since she becomes bored. (TR 170-71).

Based on Dr. Webb's report, state agency psychologists completed a mental residual functional capacity assessment and psychiatric review technique form which indicate no more than moderate nonexertional limitations.

4

Dr. Cardwell, the psychiatrist, first saw Mrs. Pleasants on February 18, 2005. Based on his initial clinical examination, Dr. Cardwell listed findings and diagnoses as follows:

> **MENTAL STATUS EXAMINATION:**
> The patient is a very pleasant woman and somewhat on edge and antsy. She has a labile mood. Her hair is shortly cropped and sticking out straight from her head. The patient's thought process is linear though she is a little bit hard to track. She speaks somewhat loudly and quickly. Her affect seems to be labile. There is no suicidal or homicidal thought and there is no psychosis. Insight and judgment are fair.
>
> **DIAGNOSTIC IMPRESSION:**
> Axis I        Bipolar Disorder, Type II
> Axis II      Deferred
> Axis III     Weight gain
> Axis IV     Moderate
> Axis V      60

(TR 192).

Dr. Cardwell continued to see Mrs. Pleasants on a regular basis. On some occasions, plaintiff's condition was said to have stabilized, and on others, it was said to have deteriorated. For example, on June 7, 2005, Dr. Cardwell felt that Mrs. Pleasants was "doing well" and that the changes in her medication had been effective. (TR 210). Beginning in August 2005, Dr. Cardwell's office began receiving reports from plaintiff's husband indicating that she was suffering from a "split personality," and that her demeanor was very aggressive. (TR 206, 205). On February 10, 2006, the psychiatrist summarized Mrs. Pleasants' status as follows:

> The patient returns doing poorly. She is fretful and she basically gives a very nice story of attention deficit disorder in the midst of wanting to call it all bipolar disorder. At any rate, we discussed some comorbid issues with ADHD as well as bipolar and I think because of her inability to focus, her inability to concentrate and her inability to stick with one task that she clearly might qualify and benefit from Ritalin. (TR 200).

On March 3, 2006, Dr. Cardwell completed a medical assessment of plaintiff's mental ability for work-related activities. The psychiatrist felt that plaintiff experiences good ability to understand, remember, and carry out instructions. However, he noted that she possesses no useful ability to maintain attention/concentration for extended periods, perform activities within a regular schedule, or perform at a consistent pace. The psychiatrist described fair ability to sustain an ordinary work routine and work without being distracted by others. He noted impairments in plaintiff's ability to interact appropriately with the public, accept instructions from supervisors, and get along with coworkers and peers. Dr. Cardwell opined that Mrs. Pleasants experiences no useful ability to maintain socially appropriate behavior. At the administrative hearing, the vocational expert testified that with the limitations identified by Dr. Cardwell, Mrs. Pleasants would be unable to "sustain a job for very long." (TR 42).

In short, the reports from plaintiff's treating psychiatrist clearly indicate that Mrs. Pleasants is unable to work on a sustained basis because of her bipolar disorder and attention deficit issues. Given the fact that Dr. Cardwell's reports cover a period of approximately one year, the court believes that plaintiff's disability has persisted for such a period as to meet the duration requirement established under both benefit programs. See 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Based on Dr. Cardwell's report, assessment, and clinical notes, the court concludes that Mrs. Pleasants has met the burden of proof in establishing total disability for all forms of substantial gainful employment.

On appeal to this court, the Commissioner argues that the Administrative Law Judge properly accorded greater weight to the report of Dr. Webb than to that of Dr. Cardwell. However, the court concludes that the Law Judge's reliance on Dr. Webb's report in denying plaintiff's claims is not supported by substantial evidence. Dr. Webb is merely a psychologist, whereas Dr. Cardwell is a

6

Case 5:06-cv-00100-GEC   Document 15   Filed 07/06/07   Page 6 of 9   Pageid#: 43

medical doctor with a psychiatric specialty. Furthermore, inasmuch as Mrs. Pleasants did not begin to see Dr. Cardwell until after Dr. Webb had submitted her report, Dr. Webb did not have the opportunity to consider input from the psychiatrist in her attempt to evaluate Mrs. Pleasants' condition. The Administrative Regulations provide that greater weight is to be given to opinions of medical sources who have treated a claimant over a period of time. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). As noted above, Dr. Cardwell has seen Mrs. Pleasants in a clinical setting on a regular basis whereas Dr. Webb evaluated plaintiff on only a single occasion on a consultative basis. Furthermore, the Administrative Regulations clearly provide that more weight should be given to the reports of medical specialists, such as a psychiatrist. See 20 C.F.R. §§ 404.1527(d)(5) and 416.927(d)(5).

In his motion for summary judgment, the Commissioner also contends that Dr. Cardwell's reports may be properly discounted because his clinical findings are inconsistent with his overall impressions. The court does not agree. In his various reports, Dr. Cardwell specifically noted plaintiff's mood swings, attention deficit, inability to focus, inability to concentrate, and inability to stick to a task. In explaining his assessments of plaintiff's work-related capacities, Dr. Cardwell specifically noted that he was relying on "clinical observations." (TR 196). Dr. Cardwell's notes also reflect that he relied on the observations of plaintiff's husband as to plaintiff's actual performance away from the clinical setting. Furthermore, Dr. Caldwell's observations are supported by those of Dr. Gehman and his staff. As was the case with Dr. Caldwell, and unlike Dr. Webb, Dr. Gehman had an enhanced perspective based on the treatment over a period of several months. The court concludes that the Commissioner's attempt to style Dr. Cardwell's impressions as undocumented is not supported by substantial evidence.

7

In what is perhaps a somewhat more compelling argument, the Commissioner also observes that Mrs. Pleasants was actually working during the period in which she was treated by Dr. Cardwell, and well after her alleged disability onset. However, the court again notes that the Administrative Law Judge specifically found that this employment activity "did not rise to the level of substantial gainful activity." (TR 14). More to the point, the court observes that the sporadic nature of plaintiff's work activity is totally consistent with the observation of Dr. Cardwell that, because of her bipolar disorder and attention deficit disorder, Mrs. Pleasants simply could not stick to one task for any prolonged period of time. Indeed, plaintiff's recent work history is extremely spotty, and reflects short employment stints lasting for no more than two or three weeks. The court is simply unable to conclude that the mere fact that plaintiff attempted to work after her alleged disability onset constitutes substantial evidence in support of the Commissioner's denial of her claims for benefits. Her work activity must be considered in context, and in the context of Dr. Cardwell's reports and the vocational expert's assessment, such activity has little relevance in assessing plaintiff's capacity for sustained employment.

Given Dr. Cardwell's series of reports, as well as the circumstantial evidence cited by the psychiatrist in making his assessments, the court concludes that Mrs. Pleasants has met the burden of proof in establishing that her bipolar disorder progressed to such a disabling level of severity as to render her disabled for all forms of substantial gainful employment. The court further finds that Mrs. Pleasants has met the burden of proof in establishing that her bipolar disorder had first reached a disabling level of severity in February 2005, when Dr. Gehman found it necessary to refer plaintiff for psychiatric intervention.

For the reasons stated, the court is constrained to conclude that the Commissioner's final decision is not supported by substantial evidence. Defendant's motion for summary judgment must

8

therefore be denied. Upon the finding that plaintiff has met the burden of proof as prescribed by and pursuant to the Act for entitlement to disability insurance benefits, judgment will be entered in favor of plaintiff. The final decision of the Commissioner will be reversed, and the case remanded for the establishment of proper benefits. The Commissioner's final decision denying plaintiff's claim for supplemental security income benefits will also be reversed to the extent that the denial was based on the finding that plaintiff is not disabled. However, since the Commissioner has apparently not yet considered whether plaintiff meets the financial eligibility requirements under that benefit program, the court must remand this portion of the case for an appropriate determination. An order and judgment in conformity will be entered this day.

The clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 6th day of July, 2007.

_____
United States District Judge